UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

------------------------------------------x

UNITED STATES OF AMERICA

      -against-

ANTONIO RODRIGUEZ,

                     Defendant.

14 Cr. 718-1 (RWS)

SENTENCING
OPINION

------------------------------------------X

**Sweet, D.J.**

On August 12, 2015, Antonio Rodriguez ("Rodriguez" or the "Defendant") pleaded guilty to: one count of Conspiracy to Commit Robbery; one count of Robbery; one count of Possessing and Aiding and Abetting in the Possession of Firearms that were Carried During and in Relation to a Robbery; one count of Carjacking; one count of Distribution and Possessing with Intent to Distribute Controlled Substances; and one count of Selling Firearms without being a Licensed Dealer.

For the reasons set forth below, Rodriguez will be sentenced to 210 months, followed by four years of supervised release, subject to modification at the scheduled sentencing hearing on December 18, 2017. Rodriguez is also required to pay a special assessment of $600.

1

**Prior Proceedings**

Rodriguez was named in a six-count superseding Information filed in the Southern District of New York on November 9, 2015 (the "Information").

Count One charged that from 2012, up to and including 2012, in the Southern District of New York and elsewhere, Rodriguez and others conspired to commit armed robberies of suspected drug dealers and other individuals involved in commercial activities that affected interstate commerce, in violation of 18 U.S.C. § 1951.

Count Two charged that on January 20, 2014, in the Southern District of New York and elsewhere, Rodriguez participated in a home invasion robbery in the Bronx, New York, obtaining proceeds from a livery cab business, and aided and abetted the same, in violation of 18 U.S.C. § 1951.

Count Three charged that on January 20, 2014, in the Southern District of New York and elsewhere, Rodriguez, during and in relation to the robbery charged in Count Two, knowingly used and carried firearms, and in furtherance of such crime, possessed firearms, and aided and abetted the use, carrying, and

possession of firearms, which were brandished during the robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

Count Four charged that on November 25, 2011, in the Southern District of New York and elsewhere, Rodriguez, with the intent to cause death and serious bodily harm, took a 2004 white BMW, that had been transported, shipped, and received in interstate and foreign commerce from the person and presence of another by force and violation, and by intimidation, in violation of 18 U.S.C. § 2119(1).

Count Five charged that from at least 2007, up to and including 2014, in the Southern District of New York and elsewhere, Rodriguez distributed and possessed with intent to distribute controlled substances, including: 100 grams and more of heroin, in violation of 21 U.S.C. § 841(b)(1)(B); 500 grams and more of cocaine, in violation of 21 U.S.C. § 841(b)(1)(B); a quantity of mixtures containing crack, in violation of 21 U.S.C. § 841(b)(1)(C); a quantity of oxycodone, in violation of 21 U.S.C. § 841 (b)(1)(C); and a quantity of marijuana, in violation of 21 U.S.C. § 841(b)(1)(D).

Count Six charged that from 2011, up to and including 2012, in the Southern District of New York, Rodriguez, not being a

licensed importer, manufacturer, or dealer, sold, offered to sell, and arranged to sell firearms on two occasions, in violation of 18 U.S.C. § 922(a)(1)(A).

On August 12, 2015, Rodriguez appeared before the Honorable James C. Francis and pleaded guilty to his criminal conduct as charged in Counts One, Two, Three, Four, Five, and Six. As part of his guilty plea, Rodriguez admitted to the forfeiture allegations with respect to Counts One, Two, and Five.

As a result of committing the offenses in violation of 18 U.S.C. §§ 1951 & 2119 as alleged in Counts One, Two, and Four, the Information directed Rodriguez to forfeit to the United States, pursuant to 21 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

As a result of committing the controlled substance offense as alleged in Count Five, the Information directed Rodriguez to forfeit to the United States, pursuant to 21 U.S.C. § 853, any and all property constituting or derived from any proceedings Rodriguez obtained directly or indirectly as a result of the said violation.

Rodriguez was arrested on October 17, 2014, and has been continuously detained since that date. Rodriguez is scheduled to be sentenced on December 18, 2017.

## The Sentencing Framework

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range
      established for—

      (A)   the applicable category of offense committed
            by the applicable category of defendant as set
            forth in the guidelines . . .;

(5)   any pertinent policy statement [issued by the
      Sentencing Commission];

(6)   the need to avoid unwarranted sentence
      disparities among defendants with similar
      records who have been found guilty of similar
      conduct; and

(7)   the need to provide restitution to any victims of
      the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all
the facts appropriate for determining a sentence, whether that
sentence is a so-called Guidelines sentence or not. See Crosby,
397 F.3d at 114-15.

**The Defendant**

     The Court adopts the facts set forth in the Presentence
Investigation Report ("PSR") with respect to Defendant's
personal and family history.

6

**The Offense Conduct**

The Court adopts the facts set forth in the PSR with respect to offense conduct. These facts are summarized, in brief, below.

On November 25, 2012, Rodriguez and others participated in an armed carjacking in the vicinity of 1316 Riverside Drive in the Bronx, New York. One of the other carjackers responded to a Craigslist advertisement for a 2004 BMW. When the seller arrived with the BMW, accompanied by another car and three others, members of the carjacking crew distracted the owner while Rodriguez, Ismeal Vasquez ("Vasquez"), and Nelson Veras ("Veras") snuck up and forcibly took the keys to both cars. During the carjacking, Rodriguez carried and brandished a fake gun, while Vasquez carried a bat, which he used to hit several of the victims. In addition to the stolen BMW, Rodriguez and the carjacking crew also stole an iPhone of one the victim's.

On January 20, 2014, Rodriguez and others engaged in a home-invasion robbery in the Bronx, New York (the "Robbery"). Rodriguez had been informed that the home contained two kilograms of cocaine, several safes, and approximately $250,000. Prior to the Robbery, Rodriguez and two others of the robbery

7

crew, Vasquez and Veras, purchased zip ties and duct tape to tie up any victims; the Robbery crew also conducted surveillances on the two nights prior to the Robbery. Other crewmembers included Christopher Perez ("Perez") and Nathaniel Deluna ("Deluna").

The night of the Robbery, Rodriguez and others wore gloves and masks, and several of the robbery crew carried weapons, including a knife and a handgun. At one point, Perez handed Rodriguez a fake gun, which Rodriguez held for several minutes. To break into the house, Rodriguez positioned himself on the roof of the house while other crewmembers grabbed a 71-year-old home resident ("Victim 1"), threatened Victim 1 with a handgun, struck Victim 1 in the face, covered Victim 1's eyes and mouth with duct tape, and bound Victim 1's hands with zip ties. Rodriguez came down from the roof, and he and others tried to force Victim 1 to open the house door; before able to do so, another victim inside the house opened the door ("Victim 2"), who Deluna assaulted and threatened with a firearm as the robbers rushed into the house.

Rodriguez, Perez, and Vasquez proceeded to search the house. The robbers found Victim 2's mother ("Victim 3") in the kitchen[1]; Vasquez bound Victim 3's feet and hands and pulled her

---

[1]    The PSR states that there was an additional minor located in the kitchen, but as only eight victims total were noted,

8

nightgown over her head, causing Victim 3 to temporarily lose consciousness. The robbers found Victim 1's cousin ("Victim 4") in the bathroom; Rodriguez struck Victim 5's head and forced Victim 5 to the ground. Victim 2's cousin ("Victim 5") was found in a bedroom and forced to open one of the safes there, after which the robbers struck and bound Victim 6 on the ground in front of his 6-year-old son ("Victim 6"); the other safe was stolen from the house. Two additional minors around 10-years-old ("Victim 7" and "Victim 8") were found in another bedroom, but Rodriguez prevented the rest of the crew from searching the room and disturbing the minors. Several other safes were opened and robbed in the house during the Robbery.

The Robbery lasted around 10 to 15 minutes, after which the robbers drove off to Vasquez's brother's house, where the robbers opened the stolen safe and split the stolen money and jewelry.

Participants involved in the Robbery had performed robberies with Rodriguez before—particularly Vasquez, Veras, and Perez—dating back to at least the summer of 2010. Examples of

---

three of which were minors, this additional inclusion is presumed a misprint. In any event, it does not change the sentencing calculus.

robberies and attempted robberies committed include robberies of homes, gambling establishments, and individuals on the street, particularly targeting individuals believed to be drug dealers.

Since 2007, Rodriguez was involved in periodic drug sales. While Rodriguez principally sold marijuana, at times in the vicinity of the Aqueduct Avenue in the Bronx, he also periodically sold cocaine, crack, heroin, and Percocet.

Rodriguez possessed and sold guns on several occasions, although he has never fired a real gun. In 2011, Rodriguez sold a sawed-off shotgun to Perez, which he had obtained from a Bloods gang member. In 2012, Rodriguez sold a handgun to an individual named "Tom," which Rodriguez had obtained from a drug dealer named "Alpa."

According to the Government, Rodriguez's criminal conduct has resulted in losses to 12 victims and totaling approximately $33,300 in stolen items. Rodriguez is known to have possessed and distributed at least 100 grams of heroin, 500 grams of cocaine, and unknown quantities of Percocet, crack, and marijuana.

**The Relevant Statutory Provisions**

For Count One, the maximum term of imprisonment is 20 years
and the maximum fine is $250,000. 18 U.S.C. §§ 1951, 3571(b).
The offense is a Class C Felony. 18 U.S.C. § 3559. The Court may
impose a term of supervised release of not more than three
years. 18 U.S.C. § 3583(b)(2). Rodriguez is not eligible for
probation. 18 U.S.C. § 3561(a)(3).

For Count Two, the maximum term of imprisonment is 20 years
and the maximum fine is $250,000. 18 U.S.C. §§ 1951, 3571(b).
The offense is a Class C Felony. 18 U.S.C. § 3559. The Court may
impose a term of supervised release of not more than three
years. 18 U.S.C. § 3583(b)(2). Rodriguez is not eligible for
probation. 18 U.S.C. § 3561(a)(3).

For Count Three, the minimum term of imprisonment is 7
years and the maximum term is life, which must be imposed
consecutively to any other count. 18 U.S.C. § 924(c)(1)(A)(ii).
The maximum fine is $250,000. 18 U.S.C. §§ 3571(b). The offense
is a Class A Felony. 18 U.S.C. § 3559. The Court may impose a
term of supervised release of not more than five years. 18
U.S.C. § 3583(b)(1). Rodriguez is not eligible for probation. 18
U.S.C. § 3561(a)(2).

For Count Four, the maximum term of imprisonment is 15 years and the maximum fine is $250,000. 18 U.S.C. §§ 2119, 3571(b). The offense is a Class C Felony. 18 U.S.C. § 3559. The Court may impose a term of supervised release of not more than three years. 18 U.S.C. § 3583(b)(2). Rodriguez is not eligible for probation. 18 U.S.C. § 3561(a)(3).

For Count Five, the minimum term of imprisonment is 5 years and the maximum term is 40 years. 21 U.S.C. § 841(b)(1)(B). The maximum fine is $5,000,000. 21 U.S.C. §§ 841(b)(1)(B). The offense is a Class B Felony. 18 U.S.C. § 3559. The Court must impose a term of supervised release of at least four years. 21 U.S.C. § 841(b)(1)(B). Rodriguez is not eligible for probation. 18 U.S.C. § 3561(a)(3).

For Count Six, the maximum term of imprisonment is 5 years and the maximum fine is $250,000. 18 U.S.C. §§ 922(a)(1)(A), 3571(b). The offense is a Class D Felony. 18 U.S.C. § 3559. The Court may impose a term of supervised release of not more than three years. 18 U.S.C. § 3583(b)(2). Rodriguez is not eligible for probation. 18 U.S.C. § 3561(a)(3).

A special assessment of $100 per count is mandatory. 18 U.S.C. § 3013(a)(2)(A). Multiple terms of supervised release shall run concurrently. 18 U.S.C. § 3624(e).

At the discretion of the Court, Rodriguez, having been convicted of a first drug distribution offense, shall be ineligible for any or all federal benefits for up to five years after such conviction. 21 U.S.C. § 862(a)(1)(A).

Defendant shall forfeit in his interest in all property, real and personal, involved in the offense or derived from proceeds obtained directly or indirectly as a result of the offense.

**The Guidelines**

The Court adopts the guidelines calculation set forth in the Presentence Investigation Report. The 2015 edition of the United States Sentencing Commission Guidelines Manual, incorporating all guideline amendments, has been used in this case for calculation purposes, pursuant to U.S.S.G. § 1B1.11.

Counts One and Two are grouped for Guideline calculations because they involve the same victims and same act. U.S.S.G.

13

§ 3D1.2(a). With regard to Count Three, the Guideline sentence
is the minimum term of imprisonment required by statute, and
accordingly Guideline Chapters Three and Four do not apply.
Counts Four, Five, and Six cannot be grouped because they
comprise separate harms. U.S.S.G. § 3D1.2.

* * * *

For Group One, Counts One and Two, the Guideline for a
violation of 18 U.S.C. § 1951 is U.S.S.G. § 2B3.1. The base
offense level is 20. U.S.S.G. § 2B3.1(a).

As a firearm was brandished during the offense, the offense
level is increased by five. U.S.S.G. § 2B3.1(b)(2)(C).

As a victim sustained bodily injury, the offense level is
increased by two. U.S.S.G. § 2B3.1(b)(3)(A).

As several of the victims' hands were restrained with zip
ties and mouths were gagged with duct tape, the offense level is
increased by two. U.S.S.G. § 2B3.1(b)(4)(B).

As the loss incurred by the victims was $20,000 or more, the offense level is increased by one. U.S.S.G. § 2B3.1(b)(7)(B).

Since Defendant knew or should have known that a victim of the offense was a vulnerable victim, the offense level is increased by two. U.S.S.G. § 3A1.1(b)(1).

As Defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, the offense level is increased by four. U.S.S.G. § 3B1.1(a).

Accordingly, the Group One subtotal is 36.

\* \* \* \*

For Group Two, Count Four, the Guideline for a violation of 18 U.S.C. § 2119 is U.S.S.G. § 2B3.1. The base offense level is 20. U.S.S.G. § 2B3.1(a).

As a firearm was brandished during the offense, the offense level is increased by five. U.S.S.G. § 2B3.1(b)(2)(C).

As a victim sustained bodily injury, the offense level is increased by two. U.S.S.G. § 2B3.1(b)(3)(A).

As the offense involved a carjacking, the offense level is increased by two. U.S.S.G. § 2B3.1(b)(3)(A).

As Defendant was an manager or supervisor of a criminal activity that involved five or more participants or was otherwise extensive, the offense level is increased by three. U.S.S.G. § 3B1.1(a).

Accordingly, the Group Two subtotal is 33.

* * * *

For Group Three, Count Five, the Guideline for a violation of 21 U.S.C. § 841(b)(1)(B) is U.S.S.G. § 2D1.1. Pursuant to U.S.S.G. § 2D1.1, application note 8(B), the offense involved at least 100 grams of heroin, which is equivalent to 100 kilograms of marijuana, and at least 500 grams of cocaine, which is equivalent to 100 kilograms of marijuana. Accordingly, as Defendant distributed and possessed with the intent to distribute the equivalent of at least 200 kilograms of marijuana, the base offense level is 24. U.S.S.G. § 2D1.1(c)(8).

Accordingly, the Group Three subtotal is 24.

\* \* \* \*

For Group Four, Count Six, the Guideline for a violation of 18 U.S.C. § 922(a)(1) is U.S.S.G. § 2K2.1. As the offense involved a firearm described in 26 U.S.C. § 5845(a), the base offense is 18. U.S.S.G. § 2K2.1(a)(5).

Accordingly, the Group Four subtotal is 18.

\* \* \* \*

Group One, with an adjusted offense level of 36, is 1 unit; Group Two, with an adjusted offense level of 34, is 1 unit; and Group Three and Group Four are 0 units. U.S.S.G. § 3D1.4. Accordingly, the total combined offense level is 38. U.S.S.G. § 3D1.4.

Based on his plea allocution, Defendant has demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. U.S.S.G. § 3E1.1(a).

Defendant has also assisted authorities by timely notifying authorities on the intention to enter a guilty plea. Accordingly, the offense level is decreased by one level. U.S.S.G. § 3E1.1(b).

Therefore, Defendant's resulting adjusted offense level is 35.

\* \* \* \*

On February 15, 2007, Defendant was arrested and pleaded guilty to criminal possession of a controlled substance in the 7th degree, marijuana, for which he served time served and a six-month license suspension. This conviction warrants one criminal history point. U.S.S.G. §§ 4A1.1(c), 4A1.2(e)(2).

On December 6, 2007, Defendant was arrested and pleaded guilty to criminal possession of a weapon in the 4th degree, a gravity knife, for which he was sentenced to a conditional discharge and two days' community service. This conviction warrants one criminal history point. U.S.S.G. §§ 4A1.1(c), 4A1.2(e)(2).

18

On January 31, 2009, Defendant was arrested and pleaded guilty to attempted criminal mischief in the 4th degree for breaking windows, for which he was sentenced to a conditional discharge, restitution, and issuance of an order of protection. This conviction warrants one criminal history point. U.S.S.G. §§ 4A1.1(c), 4A1.2(e)(2).

On November 19, 2013, Defendant was arrested and pleaded guilty to criminal possession of a controlled substance in the 7th degree, for which he received a conditional discharge. This conviction warrants one criminal history point. U.S.S.G. §§ 4A1.1(c), 4A1.2(e)(2).

The criminal convictions listed above result in a subtotal criminal history score of four. Defendant committed the instant offense while under a criminal justice sentence, so the criminal history score is increased by two points. U.S.S.G. § 4A1.1(d).

Accordingly, the total criminal history score is six, which establishes a criminal history category of III. U.S.S.G. Ch. 5, Pt. A.

\* \* \* \*

Based on a total offense level of 35 and a criminal history score of III, the Guidelines range for imprisonment is 210 to 262 months.

If supervised release is sentenced, the Guidelines range for Count Three is two to five years, U.S.S.G. § 5D1.2(a)(1), and for Counts One, Two, Four, Five, and Six is one to three years, U.S.S.G. § 5D1.2(a)(2). Defendant is ineligible for probation. U.S.S.G. § 5B1.1(b)(2).

The Guidelines fine range for this offense is $17,500 to $5,000,000. U.S.S.G. §§ 5E1.2(c)(3), 5E1.2(h)(1).

Costs of prosecution shall be imposed on Defendant as required by statute. U.S.S.G. § 5E1.5. In determining whether to impose a fine and the amount of such a fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. U.S.S.G. § 5E1.2(d)(7); 18 U.S.C. § 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated July 13, 2017, provides a

daily cost of $95, a monthly cost of $2,898, and an annual cost
of $34,770 for imprisonment.

Because Defendant was convicted of distribution or
possession of a controlled substance, the Court may deny his
eligibility for certain federal benefits. U.S.S.G. § 5F1.6.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also
gives due consideration to the remaining factors identified in
18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not
greater than necessary," as is required by the Supreme Court's
decision in Booker, 543 U.S. 220 (2005), and the Second
Circuit's decision in Crosby, 397 F.3d 103 (2d Cir. 2005). In
light of the Court's statutory responsibility "to 'impose a
sentence sufficient, but not greater than necessary' to
accomplish the goals of sentencing," Kimbrough v. United States,
552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and
having considered the Guidelines, the factors set forth in
§ 3553(a), the Court will issue a Guidelines sentence.

**The Sentence**

For the instant offenses, Rodriguez shall be sentenced to
210 months imprisonment, followed by four years of supervised
release.

As mandatory conditions of his supervised release,
Defendant shall:

    (1)   Not commit another federal, state, or local crime.

    (2)   Not unlawfully possess a controlled substance.

    (3)   Not use any unlawful controlled substances.

The standard conditions of supervision (1-13) are
recommended with the following special conditions:

    (1)   Defendant shall submit his person, residence, place of
business, vehicle, and any other property or
electronic devices under his control to a search on
the basis that the probation officer has reasonable
suspicion that contraband or evidence of a violation
of the conditions of the release may be found. The
search must be conducted at a reasonable time and in a
reasonable manner. Failure to submit to a search may
be grounds for revocation. Defendant shall inform any
other residents that the premises may be subject to
search pursuant to this condition.

    (2)   Defendant shall participate in an outpatient treatment
program approved by the United States Probation
Office, which program may include testing to determine
whether he has reverted to using drugs or alcohol.
Defendant must contribute to the cost of services
rendered based on his ability to pay and the

22

availability of third-party payments. The Court
authorizes the release of available drug treatment
evaluations and reports, including the PSR, to the
substance abuse treatment provider.

(3) Defendant is to be supervised by his district of
residence.

In consideration of all the factors set forth in 18
U.S.C. § 3572(a), and pursuant to U.S.S.G. § 5E1.2(a), it does
not appear that Rodriguez is able to pay a fine. Therefore, the
fine in this case shall be waived.

Defendant shall forfeit his interest in all property, real
and personal, involved in the offense or derived from proceeds
obtained directly or indirectly as a result of the offense.

A special assessment of $600, payable to the United States,
is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at
the sentencing hearing set for December 18, 2017.

It is so ordered.

**New York, NY**
**December 7, 2017**

~~ROBERT~~ **W. SWEET**
**U.S.D.J.**

23